IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

    Plaintiff,

  v.                                                                                            Criminal No. 10-0092

MATTHEW DUDDY,                                                         **ELECTRONICALLY FILED**

    Defendant.

**MEMORANDUM ORDER**

Before the Court is Defendant's Motion to Terminate Supervised Release (ECF 53) and the Government's Response in Opposition to same. ECF 56. Defendant requested, and was granted, the opportunity to supplement his Motion and/or Reply to the Government's Response. See ECF 57, ECF 58, ECF 59, ECF 60, ECF 61, ECF 62. Although this Court granted all of Defendant's requests, nothing was filed. The matter is now ripe for adjudication.

**I. Factual and Procedural Background**

Defendant was indicted on May 18, 2010, and charged with one count of possession of child pornography. ECF 2. During this period of time, Defendant was one of the many individuals who utilized the Gnutella network to share images of child pornography. ECF 24, ¶ 6. The Pennsylvania State Police were conducting an online undercover investigation when they noticed 22 files containing child pornography downloaded from a computer connected to the internet from Defendant's IP address. Id.

Defendant admitted to utilizing "limewire software" to access the Gnutella network, and he further admitted to downloading, viewing and burning to CDs, the images of child pornography.  ECF 24, ¶ 9.  Defendant told the police that he probably downloaded 10 movie files, several hundred picture files, and the youngest victim he would have viewed would have been a seven-year-old boy. Id.  Upon examining Defendant's computer, the troopers did not discover any images of child pornography; however, upon examining Defendant's CDs and DVDs, troopers discovered 39 child pornography movies and 26 images of child pornography. ECF 24, ¶ 10.  Because each of the 39 videos was considered to have 75 images per video, the total number of images in Defendant's possession was determined to be 2,951 images of child pornography. ECF 24 ¶ 18.

On December 20, 2010, Defendant pled guilty to the single count of possession of child pornography and was sentenced the same day to serve a 41-month term of imprisonment followed by a 25-year term of supervised release, along with a $7,500.00 fine. ECF 35 and ECF 35.  Defendant filed an appeal of this sentence to the United States Third Circuit Court which was voluntarily dismissed. ECF 36 and ECF 39.  Ultimately, Defendant paid the fine and served his term of imprisonment and he was released on supervised release on or about December 17, 2013. Inmate Locator (bop.gov).

While on supervised release, Defendant (who is now 49 years old) has had a total of four incidents -- two incidents in 2014, and two incidents in 2018 -- where his urine tested positive for marijuana. ECF 44, ECF 46, ECF 49, and ECF 51.  Since 2018, Defendant appears to have had no other transgressions related to the terms of his supervised release.

**II. Legal Standard**

A court may, under specific conditions, terminate a term of supervised release prior to the expiration of that term. 18 U.S.C. § 3583(e).  The statute governing early termination of supervised release reads as follows:

> Modification of conditions or revocation.--The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)—
>
> (1) terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice . . . .

18 U.S.C.A. § 3583(e).

**III. Discussion**

### A. Defendant's Supervised Release Special Condition Relating to his Computer and Internet Usage

Turning to the instant case, the Court begins by noting that Defendant bears the burden of proving he is entitled to the early termination of his 25-year period of supervised release.  The Court further notes that Defendant's supervised release began on or about December 17, 2013.  This means Defendant has not yet completed 9 years of his 25-year term of supervision.  Stated differently, he has completed over a 1/3, but less than 1/2 of his supervised release term.

The judgment entered in this case indicates that this Court ascribed a special condition given Defendant's possession of over 2,500 images of child pornography:

> The defendant is permitted to possess and/or use a computer and is allowed access to the internet.  However, the defendant is not permitted to

3

> use a computer or other electronic communication or data storage devices, including a cell phone, to access child pornography or to communicate with any individual or group for the purpose of promoting sexual relations with children.
>
> The defendant shall consent to the installation of hardware/software to monitor any computer or other electronic communication or data storage devices used by the defendant to confirm the defendant's compliance with this condition. The defendant shall pay the monitoring costs as directed by the probation/pretrial services officer.
>
> Furthermore, the defendant shall consent to periodic unannounced examinations by the probation pretrial services officer of any computers, cell phones, or other electronic communication or data storage devices that defendant has access to, to confirm the defendant's compliance with this condition. additionally, the defendant shall consent to the seizure and removal of hardware and data storage media for further analysis by the probation/pretrial services officer, based upon reasonable suspicion of unlawful conduct by the defendant.
>
> The defendant's failure to submit to the monitoring and/or search of computers or other electronic communication or data storage devices used by the defendant may be grounds for revocation.
>
> \*       \*       \*
>
> The defendant Shall provide the U.S. Probation office with accurate information about his entire computer system (hardware/software) and other electronic communication or data storage devices or media to include all passwords used and the name of the Internet Service Provider(s). The defendant shall also abide by the provisions of the computer restrictions and monitoring program approved by the court.

ECF 35, p. 4.

### B. Defendant's Arguments for Early Termination of Supervised Release

Defendant's motion for early termination of supervised release indicates that since the time of his release from prison, Defendant entered the workforce and "has remained employed as a professional landscaper and apartment manager." ECF 53, p. 1-2. Defendant's motion also

4

indicates that he "established a publishing company known as 'Stonehouse Daffodils, LLC' and published a book entitled, 'Narcissus: Daffodils.' " Id., p. 2.  Defendant obtained a license from the USDA to import bulbs from the Netherlands and the United Kingdom, and in 2021, Defendant developed "daffodils.com" which is an online retailer of the flower bulbs.  Id.

Defendant's primary contention in his motion is that the special condition of his supervised release – the monitoring of his computers and his internet activity – are performed by a third-party contractor known as "Remotecom." Id. at p. 7.  Defendant argues that Remotecom's software is "unduly burdensome" because it "occasionally" consumes "100% of the system's resources rendering it nearly inoperable for significant periods of time (three weeks in one case, and a complete shutdown in another)." Id.  Simply stated, it appears as though when the Remotecom software is activated, Defendant's computer becomes "nearly inoperable." Id.  Defendant argues that "[t]his circumstance is of particular concern . . . because [Defendant] makes his livelihood operating an online business, to which computer access is necessary. . .". ECF 53, p. 2, fn 7.  Finally, Defendant notes that the "private financial information of his clients is potentially exposed to numerous third parties at Remotecom." ECF 53, p. 2, fn 7, and p. 7.

Defendant also claims his ability to travel freely has been significantly hampered by his supervised release restrictions. Id.  Defendant notes that on recent business trips to Gettysburg, PA, and Chambersburg, PA, the Pennsylvania State Police and probation officers caused him to be professionally embarrassed, and damaged his professional image. Id. p. 7-8.

In sum, Defendant claims that Remotecom's interference with his computer and software programs makes it difficult and at times, impossible, to conduct his online flower business.  He

5

also argues that the restrictions on his ability to travel for professional purposes have caused him embarrassment and have damaged his professional image.

### C. The Government's Response to Defendant's Request for Early Termination

The Government notes in its response in opposition that Defendant failed to indicate how much of his income is derived from his online "daffodils.com" business. Notably, Defendant indicated that he has more than one income stream – specifically, work he performs as a landscaper as well as work he performs as an apartment manager. ECF 53, p. 1-2. He also has published a book which is commercially available to buyers through Google and Apple. Id., p. 2.

### D. The Court's Analysis

The Court re-examined Defendant's Pre-Plea Presentence Report, which indicates that in August of 2010, Defendant was working as an apartment manager for his family's business (Duddy Management Group) for $12.00 per hour. ECF 24, ¶ 45. His mother was the manager for his family's real estate business and his stepfather was a retired real estate developer. Id., ¶ 32. The report also notes that in August of 2010, Defendant owned his own apartments (Edgebrook Apartments) which he purchased from his father, and these apartments, in turn, provided him with $45,000 per year in income. Id., ¶¶ 46 and 51. The report further notes that Defendant has an undergraduate degree from Penn State, and a graduate degree in business administration from University of Pittsburgh. Id., ¶ 44. Thus, based on the statements set forth in Defendant's present-day motion combined with the information provided to the court in 2010 via

his Pre-Plea Presentence Report, it appears as though Defendant works for his family's real estate business and has his own real estate holdings from which he derives income.

### 1. First Factor Under 18 U.S.C § 3553

Turning now to the Section 3553 factors, the first factor – the nature and circumstance of the offense – bodes against an early termination of supervised release. Defendant possessed more than 2,000 images of child pornography which he sought out through a dark website. He admitted that the youngest person on those images was a seven-year-old boy. He removed the images from his computer, but maintained the images on CDs and/or DVDs, thereby enabling him to view those images repeatedly and at will. There can be no doubt that child pornography – and those who view such images thereby creating and maintaining a market for such images – cause the victims to suffer, not just at the moment the abuse occurs, but for the entire lifetimes of those victims who must live with the memories of the abuse and the knowledge that countless numbers of people may forever watch them being abused.

### 2. Second Factor Under 18 U.S.C § 3553

The second Section 3553(a) factor, requires this Court to consider what punishment will afford adequate deterrence given Defendant's criminal conduct. As noted above, this Court sentenced Defendant to a term of 41 months imprisonment, which was a 10-month downward variance from the guideline range, in part because Defendant had the ability to maintain his status as a productive member of society by resuming his work as an apartment manager and by resuming his business as a landscaper. However, given the number of images Defendant

possessed, and the criminal conduct in which Defendant engaged in order to obtain those images, the Court sentenced Defendant to a supervised release period of 25 years, which included computer and online monitoring.  At the time of sentencing this Court did, and still does, consider computer and online monitoring to be an important component to deter Defendant from re-engaging in downloading and viewing child pornography.  Thus, in order to accomplish the goal of deterrence, yet still enable Defendant to carry on his legal business endeavors and maintain his ability to be a productive societal member, the Court finds that Defendant's computer and internet activity must be monitored.  In doing so, the Court continues to ensure the protection of the public from potential future crimes related to the possession of child pornography by this Defendant, while simultaneously reflecting the seriousness of Defendant's crime, providing just punishment to Defendant for his offense, and promoting respect for the law.

### 3. Third Factor Under 18 U.S.C § 3553

The third factor requires this Court to consider the kinds of sentences that are available. This Court determined a downward variance from the low end of the guideline range was warranted in this case, but concluded that a within-the-guideline-range, 25-year period of supervised release, was warranted.[1]

### 4. Other Considerations

"New or changed circumstances are not required to grant relief.  However, when a sentence is "'sufficient, but not greater than necessary' when first pronounced," a motion for early termination should provide some justification for a change in the sentence that was originally imposed. *United States v. Duncan*, No. CR 16-274, 2022 WL 2755349, at *2 (E.D. Pa. July 14, 2022) (internal citations omitted).

Just under nine years into his 25-year term of supervised release, Defendant argues that two special conditions of his supervised release have become overly burdensome – specifically, the computer and online monitoring special condition, and the standard condition surrounding his ability to travel.   Instead of requesting a modification with respect to those two conditions, Defendant instead filed the instant motion to terminate the entire remaining 16 years of his supervised release.

The United States Court of Appeals for the Third Circuit has specifically reviewed cases where the early termination of supervised release was considered when the underlying offense has been a crime against children.  In *United States v. Miller*, 594 F.3d 172, 186 (3d Cir. 2010),

---

[1] The guideline range for Defendant's term of supervised release was no less than 5 years to life.

9

the Court of Appeals noted that *United States v. Freeman*, 316 F.3d 386 (3d Cir. 2003), was illustrative with regard to "'the kind of tailoring the court should have considered' in crafting the computer restriction." The Court in *Miller* went on to analyze the *Freeman* case noting:

> On appeal, we made clear that "[t]here is no need to cut off [a child pornography offender's] access to email or benign internet usage when a more focused restriction, limited to pornography sites and images, can be enforced by unannounced inspections of material stored on [the offender's] hard drive or removable disks." *Id.* at 392. We specifically distinguished *Crandon* on the ground that the offender in that case had "used the internet to contact young children and solicit inappropriate sexual contact with them," a "use of the internet [that] is harmful to the victims contacted and more difficult to trace than simply using the internet to view pornographic web sites." *Id.* As a result, *Crandon* and similar offenders merited a more severe restriction, and we took care to emphasize that "[w]e are not in any way limiting our ability to . . . restrict the use of computers when a defendant has a past history of using the internet to contact children." *Id.* In Freeman's case, however, "a total ban on internet access" was not warranted. *Id.* Furthermore, we added that if Freeman violated a more tailored limitation on his access to pornography websites and images, then the district court might impose a broader restriction on his internet access. *Id.*

*Miller*, 594 F.3d at 186.

The Court of Appeals for the Third Circuit also insists on "'some evidence' that the special conditions imposed are 'tangibly related' to the goals of supervised release. *United States v. Holena*, 906 F.3d 288, 290 (3d Cir. 2018), citing *United States v. Voelker*, 489 F.3d 139, 144 (3d Cir. 2007); see 18 U.S.C. § 3583(d). To justify special conditions, district courts such as this Court must provide supporting facts. *Id.* at 290-91, *citing United States v. Thielemann*, 575 F.3d 265, 272 (3d Cir. 2009). The Court of Appeals will affirm a decision if that Court can "ascertain any viable basis" in the record for the restriction. *Id.* (*quoting Voelker*, 489 F.3d at 144).

10

This Court finds that the supporting facts discussed above warrant a continuation of Defendant's supervised release – not a termination of it. Defendant's online business may comprise a portion of Defendant's income, but it certainly does not appear to this Court to be his sole source of income. Additionally, the fact that Defendant runs an online business with overseas connections gives this Court greater concern that Defendant's ability and opportunities to reoffend increases. Furthermore, this Court is unwilling to terminate Defendant's supervised release given that the standard conditions and other special conditions of supervised release are also important in this case. For example, the standard condition that requires Defendant to "refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance" is important, given Defendant's four previous infractions for dirty urine in which marijuana was detected. Similarly, the special condition of supervised release which requires Defendant, in accordance with 18 U.S.C. 3563(a)(8) and 3583(d), and the Sex Offender Registration and Notification Act, to report the address where he will reside and any subsequent change of residence to his probation officer, and further shall register as a convicted sex offender in any state where he resides, is employed, carries on a vocation, or is a student, serves as a deterrent while providing the public with protection.

The facts of Defendant's case – both at the time of sentencing and today – provide a viable basis for the imposition of the standard and special conditions of supervised release ordered by this Court, including the two conditions (computer and internet monitoring and travel requirements) of which he complains.

While this Court credits Defendant's ongoing rehabilitation, his various forms of employment (working as a manager of rental housing he owns and as a manager of his family-owned apartments, his landscaping business, and his online daffodil business, and his publication), as well as the steps he continues to take to rebuild his life, "compliance" is "the expectation" and "generally is not enough to warrant termination of supervised release." *United States v. Damiano*, No. 07-153, 2020 WL 7263183, at *2 (E.D. Pa. Dec. 10, 2020).

### 5. Summary

Weighing the Section 3553(a) factors and balancing the monitoring of Defendant's travel and his online conduct (which is extensive, given his internet business and international imports) while Defendant serves the remainder of his supervised release term against the circumstances underlying his conviction – his possession of over 2,000 images child pornography downloaded from a dark website and burned onto other media forms – and the protection of the public, the Court finds that termination of the remainder of Defendant's supervised release is not appropriate.[2]

---

[2] The Court notes that if Defendant and his Probation Officer reach an agreement with respect to a less interruptive computer monitoring software (or some other form of monitoring of Defendant's computer and internet activity) which would attain the objective sought by the special condition of his supervised release but allow for less "downtime" with respect to Defendant's online business, the probation office should submit a stipulated modification of that special condition of Defendant's supervised release. Similarly, if the Probation Officer and Defendant agree that there is a better method to manage Defendant's travel obligations for his business(es), the probation office should submit a stipulated modification of that standard condition of Defendant's supervised release.

### IV. Conclusion

Based on the foregoing law and authority, Defendant's Motion for Termination of Supervised Release (ECF 53) is DENIED.

SO ORDERED this 6th day of October, 2022.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All counsel of record